ALFRED M. COPELAND *vs.* MILO A. TAYLOR.

On the question of the amount of the property of a trader at a certain time, and to contra-dict his testimony which tended to show that it was then a certain sum, evidence is ad-missible of his declarations that at a former time it was a materially different sum, he hav-ing also testified that between the two times there was no particular change in his stock and he met with no serious loss.

Offers of a person to others interested in a claim against him, at interviews held with them "in relation to an adjustment" or "with a view to a settlement," to "leave out the matter in dispute," or to communicate information concerning the claim on condition that it should not be used against him in a lawsuit, are inadmissible in evidence in a suit on the claim.

TORT, on the Gen. Sts. *c.* 118, § 91, by the assignee of Sum-ner Babcock, an insolvent debtor, for the conversion of six hun-dred corsets and seven hundred petticoats, alleged to have been conveyed by Babcock to the defendant within six months before the filing of the petition in insolvency, and received by the latter with reasonable cause to believe that Babcock was insolvent. At the trial in the superior court, before *Brigham*, J., the jury found for the plaintiff; and the defendant alleged exceptions, of which the following are the material parts :

" Babcock was a witness, and testified that he paid in cash to various creditors, within six months of September 27, 1864, which was the date of the commencement of the proceedings in insolvency, about $6000 ; that from September 1863 until the time of his failure there was no particular change in his stock ; hat he was carrying a stock of from $2000 to $4000, and met with no serious loss. It also appeared that said Babcock's prop-erty was appraised at the value of $650, by the appraisal in insolvency. In rebuttal of Babcock's testimony, and for the purpose of showing that Babcock had not accounted for his property, a witness was called who testified, under the objection of the defendant, that in September 1863 he had a conversation with Babcock as follows : ' He said he came to buy goods ; that he was worth $10,000 and owed nobody a dollar.' Said wit-ness further testified that he could not say whether Babcock said he was worth $10,000, or had a stock of goods of $10,000."

" The court, against the objection of the defendant, permitted Absalom Meade, a creditor of Babcock, to testify that after the insolvency of Babcock he went to Chicopee and saw the defendant with a view to a settlement of the claims of the assignee against the defendant, and the defendant took him into a room alone and said he ' thought this matter ought to be fixed up without a lawsuit;' that the witness answered, ' We claim we have been swindled, and that we did not get the full amount of goods of Babcock;' and the defendant replied : ' I am willing to tell you my whole connection with the matters, if you will not use it against me in case of a lawsuit;' that the witness refused to agree to this, and the defendant then said that ' Babcock was away, and when he returned he would use his influence with him to have the thing settled up, and would not say but he would lend Babcock the money to settle this claim.' The objection of the defendant was, that the above conversation was privileged. The plaintiff also testified, under like objection, that he made an appointment with the defendant to meet him at his office in relation to an adjustment of this matter, and his claim as assignee; that the defendant came to his office, and he told the defendant what the creditors had been informed as to the conveyance of Babcock's property to him, and that ' we had met to see what could be done and with a view to have it arranged,' and substantially the same words were spoken by the defendant then as in the conversation testified of by Meade; and the defendant offered to leave out the matter in dispute, which the plaintiff declined to do ; also that at another time thereafter he met the defendant in the depot, and he expressed himself anxious to have the matter settled, and said he would explain the information received by the plaintiff and Babcock's creditors, if he would agree not to use the conversation against him in case of lawsuit."

*G. M. Stearns*, for the defendant.

*N. A. Leonard*, for the plaintiff.

HOAR, J. But two of the questions raised by the bill of exceptions were presented by counsel for the defendant at the argument, the other being waived.

**1.** The evidence of admissions by the insolvent debtor of the amount of his property in 1863 was admissible, for the purpose of contradicting his testimony as to his pecuniary condition in 1864. He had testified that from 1863 to 1864 there had been no particular change in his stock, and that he had suffered no serious loss. The amount of his property in 1863 would therefore have some tendency to prove what it was in 1864, and to contradict the statement that it was of much less value than he had admitted at the earlier date.

**2.** The admission of the testimony of Meade and of the plaintiff was not so free from exception. The parties met, upon the plaintiff's invitation, " with a view to a settlement of his claims against the defendant." That at this meeting the defendant " offered to leave out the matter in dispute " should not, we think, have been allowed to be given in evidence to the defendant's prejudice, and against his objection. It was a mere offer of a mode of adjustment, which he had a right to make; and all the reasons which render an offer to compromise inadmissible in evidence apply to it. The jury may have inferred from the offer that he was conscious that his title was questionable. So the offer to communicate information, if the plaintiff would agree not to use it against him in case of a lawsuit, is a privileged communication. " It is the condition, tacit or express, that no advantage shall be taken of the admission, it being made with a view to and in furtherance of an amicable adjustment, that operates to exclude it." 1 Greenl. Ev. § 192. If any fact stated for such a purpose and under such a reservation would be inadmissible in evidence, the offer to communicate facts must be equally so, and for the like reason.

*Exceptions sustained.*